Johnston, Judge—
It does not appear to me from any construction which I can make of the Laws of this State, respecting the punishment of Slaves, that they are made liable to be punished with death, in any case where the like punishment is not by law to be inflicted on a Freeman, except *59 only in the cases mentioned in the 47th section, of the act concerning Servants and Slaves, passed in the year 1741.
I cannot prevail on myself to adjudge in any case, that a crime shall be punished with death, unless there is an express law for that, purpose, and am of opinion that no implication, however obvious, can be admitted in such cafe, and that the discretion allowed in these cases, must apply to the quantum or measure, not the degree of punishment.
Therefore it is my opinion, that the judgment be reversed, and that the prisoner be remanded to receive such other punishment, short of death, as the Court, who tried her shall think just, so that the same be warranted by the Laws and Constitution of the State.
Taylor, Judge—
In ascertaining the true construction of the act, it is necessary to take into view, some others, which have been made relative to the same subject. The whole are founded on a principle of severe policy, absolutely necessary to guard Society against the evil consequences resulting from the condition of slavery. Where some offences had been previously provided against, in an act passed the same session, one perhaps at that time of frequent occurrence, in the nature of a conspiracy by three or more to rebel or murder, is by this act made punishable with death; the next clause requires that upon a Slave being convicted of any other crime or misdemeanor, such judgment shall be part, according to the discretion of the Court, as the nature of the crime shall require. These expressions do, in my opinion, give the Court a power to inflict any punishment upon any crime or misdemeanor, where a specific punishment had not been previously directed by law. In such *60 cases the prescribed punishment must be inflicted but in all others the Court are to regulate their discretion by the nature of the crime. This will depend upon their frequency, enormity, the temptation to commit them, the necessity of an example, and a variety of other circumstances, that ought, in a peculiar manner, to be considered in estimating the offences of these persons.
It certainly could not be the intent of the Legislature that they should be punished according to the ordinary penal code, for then it were unnecessary to have gone further then a simple regulation of the trial, and not to have said any thing about the punishment; and because by the former act, the offence of healing certain property is punishable with whipping and the pillory ; whereas stealing money would only be punished by burning in the hand. This is a discrimination in favour of an offence of equal magnitude, which I do not think the Legislature intended to make. The act of 1786, Iredell's Revisal, page 588, does in the preamble recognize the fact, that many persons by cruel treatment to their Slaves, cause them to commit crimes for which they are executed. It then proceeds to take away the allowance which had been theretofore made to the owners of such Slaves.
The cruel treatment here alluded to must consist in withholding from them the necessaries of life, and the crimes thence resulting, are such as are calculated to furnish them with food and raiment. It then appears that in 1786, the Legislature was perfectly aware, that from 1741 until that time, it had been the practice to execute Slaves upon a conviction of grand larceny, when free persons were only burnt in the hand, and they have not de *61 clared that this is a false exposition of the law. It seems to me that the acts subsequently made, had no other end than to extend to them the trial by Jury, and to ascertain the respective provinces of the Court and the Jury, still leaving the discretion of the former as to the punishment, as unlimited as the first act had made it.
I am sensible that the law is a harsh one, and I fear that abuses have been committed under it; but these may be controlled by the Legislature whenever they think fit to interpose. Thinking as I do, from the short time I have had to deliberate on this cafe, that their intention is free from doubt, a sense of duty compels me to pronounce it, however repugnant it may be to my private notions of humanity.
Macay, Judge—
The act of Assembly passed in 1741, sec. 47, of chap. xxiv. makes the consulting, the advising, the conspiring, to rebel, to make insurrection, the plotting or conspiring of three or more Slaves to murder any person or persons whatsoever, to be felony, and on conviction to suffer death. Section 48 of same chapter, directs the manner in which every slave committing such offence, or any other crime or misdemeanour, shall be tried, and what evidence shall be admissible, and directs the three Justices and the four Freeholders, on the slave or slaves being found guilty, " to pass such judgment on such offender. “ according to their discretion, as the nature " of the crime or offence shall require, and on " such judgment to award execution.” The offence found by the Jury in this case, is an attempt to poison, therefore the offence does not come under the description of any of those offences enacted by the 47th section; had the act stopped here *62 she must have been acquitted. But section 48 empowers the three Justices and four freeholders to try her for any other Crime or Misdemeanour, and to pass such judgment according to their discretion, as the nature of the offence may require.
Crimes and Misdemeanours were offences known by the law at the time of passing this act, and the punishment also known and established. The offence found against Sue is an attempt to poison ; if the same offence was committed by a free person, it could not be punished with death— it is only a misdemeanour of an aggravated nature, and could be punished with fine, imprisonment and other corporal punishment; no judgment of death could be given. The punishment of this, particular offence was known when the Act passed ; the Act has made no alteration in the punishment, it was then discretionary with the Court. It never was conceived that the Court could give judgment of death for this offence; they could fine, imprison, or inflict other corporal punishment as had been established by common usage. The discretion given by the Act of Assembly is a legal discretion, not the power of altering punishments, or affixing to any offence, a punishment unknown to the law. This would be for the Court to legislate not to adjudicate, a power unknown to any of the Courts of this State. The Justices of the County Court, have pronounced a judgment different from the nature of the offence, which the jury have found against the prisoner; their discretion only extends to increasing or diminishing the punishment. Let the judgment pronounced by the said Justices against the prisoner be reversed, and the prisoner be remanded to said Justices to receive such judgment as the laws and constitution of this state will warrant.